UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:                                            :
                                                  :
        GENERAL MEDIA, INC.                       :            Chapter 11
                                                  :            Case No. 03-15078 (SMB)
                        Debtor.                   :
------------------------------------------------ X
JANE HOMLISH KRYNICKI,                            :
                                                  :
                Plaintiff,                        :
                                                  :
        - against -                               :
                                                  :
PENTHOUSE MEDIA GROUP, INC.,                      :
MARC BELL,CHARLES SAMEL,                          :            Adv. Proc. No. 05-03658
JASON GALANIS, DANIEL STATON,                     :
INTERNET BILLING COMPANY, LLC,                    :
JOHN DOES 4-8 and ABC COMPANIES                   :
2-4,                                              :
                                                  :
                Defendants.                       :
------------------------------------------------ X

## MEMORANDUM DECISION GRANTING IN PART
## AND DENYING IN PART MOTION TO DISMISS
## AND DENYING MOTION FOR SANCTIONS

**A P P E A R A N C E S :**

DINES & ENGLISH, L.L.C.
Attorneys for Plaintiff
685 Van Houten Avenue
Clifton, New Jersey 07013

        Patrick C. English, Esq.
            Of Counsel

BERKMAN, HENOCH, PETERSON & PEDDY, P.C.
Attorneys for Defendants Penthouse Media Group, Inc.
  Marc Bell and Daniel Staton
100 Garden City Plaza
Garden City, New York 11530

         Ronald M. Terenzi, Esq.
                Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

The plaintiff commenced this adversary proceeding primarily to recover

severance benefits from the reorganized debtor and certain individuals, based on claims

sounding in contract and tort.  The defendants Penthouse Media Group, Inc.

("Penthouse"), Marc Bell and Daniel Staton (collectively, the "Movants") moved to

dismiss the Amended Complaint for failure to state a claim on which relief can be

granted, FED. R. CIV. P. 12(b)(6), and for failure to satisfy the pleading requirements of

FED. R. CIV. P. 9(b).  They also sought sanctions.  For the reasons that follow, the second

and third counts of the Amended Complaint are dismissed as against these Movants.

Count 1 is also dismissed as against the Movants to the extent that it alleges a breach of

the Guccione Agreements, described below. The motions are otherwise denied.

## BACKGROUND[1]

### A.    The Contracts

Penthouse is the successor in interest to General Media, Inc., a reorganized

chapter 11 debtor, (Amended Complaint, ¶2) (ECF Doc. #45 filed in Adv. Proc. No. 05-

---

[1]    The parties have made assertions and submitted a substantial amount of material that go well
beyond the pleadings, and disclose disputed facts.  On a motion under Rule 12(b)(6), however, the Court
may only consider the pleadings in addition to the contents of any documents attached to the complaint,
incorporated by reference, or relied on in drafting the complaint, <u>Chambers v. Time Warner, Inc.,</u> 282 F.3d
147, 153 (2d Cir. 2002), as well as matters of which judicial notice may be taken.  <u>Brass v. American Film
Techs., Inc.,</u> 987 F.2d 142, 150 (2d Cir. 1993).

03658), and the two are referred to collectively as the Debtor.  The Debtor had employed

the plaintiff in various capacities for approximately 33 years.  (<u>Id.</u>, at ¶ 14.)  The Debtor

induced the plaintiff to continue to work by promising that it would pay the educational

expenses of her children, grant her vacation time, and pay severance benefits.  In

addition, after the Debtor filed for bankruptcy (in August 2003), she was promised

continued employment as part of the reorganization plan.  (<u>Id.</u>, at ¶ 15.)

The Debtor confirmed the Fourth Amended Joint Plan of Reorganization (the

"Plan") (ECF Doc. # 642)[2] by order dated August 13, 2004 ("Confirmation Order").

(ECF Doc. # 649.)  The Plan incorporated a Fourth Amended Plan Supplement, dated

Aug. 12, 2004)("Plan Supplement")(ECF Doc. # 644) that included two unsigned

agreements central to the plaintiff's tort claims.[3]  Under the first, a Consulting Agreement

between the Debtor and General Media International, Inc. ("GMII"), a non-debtor

affiliate, the Debtor agreed to engage GMII to provide the consulting services of GMII's

principal, Robert C. Guccione, for 10 years.  The Consulting Agreement did not mention

the plaintiff, and contained a negating clause to the effect that the parties did not intend to

create enforceable rights on behalf of any third parties:

> No party shall assign this Agreement without the prior written consent of
> the other party.  This Agreement shall be binding upon and inure to the
> benefit of and be enforceable by the parties hereto and their respective
> heirs, legal representatives, successors and assigns, <u>but no other person
> shall acquire or have any rights under or by virtue of this Agreement</u>.

---

[2]      Unless otherwise stated, the citations to "ECF" refer to the electronic docket in the main case, No.
03-15078.

[3]      The Amended Complaint alleged that the Plan included a continuation of her employment and
benefits, (Amended Complaint, at ¶ 25), and referred to a Consulting Agreement that was part of the Plan.
(<u>Id.</u>, at ¶¶ 27, 28.)  Oral argument clarified that the plaintiff was referring to the Consulting Agreement and
the Letter Agreement, described in the succeeding text.  The two agreements were attached as Exhibit 8 to
the Plan Supplement.

(Consulting Agreement, at § 8.04)(emphasis added.)

The second agreement, a Letter Agreement between Guccione and the Debtor, which was attached as Exhibit A to the Consulting Agreement, is the more important one. Paragraph 4 stated in pertinent part:

> The Company [the Debtor] shall provide Consultant [Guccione] with one full-time assistant, namely Jane Homlish [the plaintiff] (or such other person as Consultant shall designate) . . . . <u>In any event, the Company shall employ Ms. Homlish (on condition that she is willing to be so employed) in a position having substantially similar duties with salary and comparable benefits to those she currently enjoys</u> . . . .

(emphasis added.)  Despite this language, the Letter Agreement, like the Consulting Agreement, included a negating clause:

> This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective heirs, legal representatives, successors and assigns, <u>but no other person shall acquire or have any rights under or by virtue of this Agreement</u>.

(Letter Agreement, at ¶ 13)(emphasis added.)

The Confirmation Order expressly authorized and approved the Consulting Agreement and the Letter Agreement (collectively, the "Guccione Agreements"), but they were never executed. (Confirmation Order, at ¶ 10.)  On October 6, 2004, the Debtor filed a statement declaring that the Plan had become effective one day earlier, and that the Debtor had not consummated the Guccione Agreements, and did not expect to. (<u>See</u> ECF Doc. # 742.)  The next day, October 7, 2004, the Debtor fired the plaintiff. (Amended Complaint, at ¶ 17.)  The plaintiff demanded the payment of her severance benefits, but the Debtor refused.  (<u>Id.</u>, at ¶¶ 18-21.)

**B.    The Tortious Conduct**

The reasons underlying the plaintiff's termination, and the failure to execute the

Guccione Agreements, were spelled out in the Amended Complaint and in a pleading

from another action brought by Guccione in New York state court (the "Guccione

Complaint") attached as Exhibit C to the Amended Complaint.  The Guccione Complaint

spans 35 pages, but at oral argument, the plaintiff's attorney identified the important

allegations.  Bell and Staton were looking to take over the Debtor.  According to the

Guccione Complaint, the defendant Bell told Guccione on August 6, 2004, that he and

the defendant Staton were prepared to go forward with a version of Bell's former plan on

the condition that the new plan was confirmed within a week.  (Guccione Complaint, at

¶64.)  Bell reaffirmed that he would provide Guccione with a deal worth $500,000 per

year for 10 years, plus another $250,000 annually for benefits and a staff, plus the right to

possess certain personal property. (Id.)  Guccione had no alternative but to support the

Plan.  (Guccione Complaint, at ¶ 69.)

Bell and Staton had ulterior motives in making the promises to Guccione, which

they did not intend to honor.  They needed the approval of the Debtor's board of directors

to confirm the Plan.  The Debtor's board consisted of three members, two of whom were

Guccione and his daughter.  Bell and Staton made the false promises to Guccione to

induce him to support their plan in his capacity as a director of the Debtor.  (Id., at ¶ 65.)

Their plan was ultimately approved, as Bell and Staton were the only potential sources of

re-financing at the time.  (Id., at ¶ 67.)  On the effective date, Bell and Staton became the

two directors of the Debtor, (see Plan, at § 8.3.1), and respectively, its the president and

treasurer/secretary.  (Plan Supplement, Ex. # 3.)

5

Bell and Staton engineered an excuse to avoid signing the Guccione Agreements by linking them to another transaction.  In early August 2004, and while they were negotiating the Plan and the Guccione Agreements, they asked Guccione to include certain UK trademarks in the overall deal.  Although the defendants Samel and Galanis had asserted claims to the UK trademarks, Guccione believed that those claims were invalid, and agreed to a separate deal concerning the UK trademarks with Bell and Staton.  ( Guccione Complaint, at ¶ 73.)  Thus, Bell and Staton agreed to engage Guccione as a consultant for the aggregate amount of $750,000 annually, including an assistant and a secretary, and Guccione agreed, among other things, to transfer the UK trademarks to the Debtor on or after the effective date.  (Id., at ¶ 74.)

The deal was a pretense; the UK trademark transaction was orchestrated with the assistance of Samel and Galanis "for the express purpose of getting the Fourth [Amended Joint] Plan of Reorganization confirmed and dividing the spoils of that conquest without ever paying Guccione."  (Id., at ¶ 75.)  Bell and Staton used the promise of the Consulting Agreement to induce Guccione to support the Plan, and thereafter, they used the alleged unavailability of the UK trademarks "as a contrived excuse not to honor that deal."  (Id.)  Upon information and belief, this was part of a wide-ranging conspiracy among Bell, Staton, Samel and Galanis.  (Id. at ¶77.)  Immediately after confirmation, Bell and Staton offered Samel and Galanis the chance to acquire a 37% stake in the reorganized debtor.  The latter raised the necessary money by falsely representing to third parties that they controlled the UK trademarks.  (Id.)

The Amended Complaint added several allegations, many conclusory, which were consistent with the scheme described in the Guccione Complaint.  It charged that the Plan

6

was based upon a fraud.  The failure to consummate the Plan was part of a "secret

alliance," an "illicit alliance," and a "secret deal" between and among Samel, Galanis,

Bell and Staton to "avoid honoring" the Guccione Agreements, which were part of the

Plan and would have ensured the Plaintiff's continued employment and historical

benefits. (Amended Complaint, at ¶27.)  They conspired to take over the Debtor, and

never intended to honor the Plan as it pertained to the employment of Guccione or the

plaintiff.  (Id.)  The plaintiff was never told (until she was fired) that her employment and

severance benefits would be terminated.  (Id., at ¶ 28.)  These defendants knew about the

plaintiff's rights, and interfered with them in a manner that was "intentional and

improper," went "far beyond the bounds of legitimate business activities," was a "done as

part of a wrongful act," and lacked any "legal or social justification."  (Id., at ¶ 29.)

**C.      The Plaintiff's Claims for Relief**

The Amended Complaint asserted three causes of action.  Count 1 sounded in

contract, and alleged that the Debtor breached its pre-petition promise, affirmed post-

petition but pre-confirmation, to pay the benefits that had been promised during the 33

years of the plaintiff's employment.  In particular, this included her claim for severance

pay.  It is not clear whether Count 1 was also intended to allege a contract claim under

the Guccione Agreements.  Count 2 charged all of the defendants other than the Debtor

with tortious interference with the contract rights.  Count 2 referred to the accrued pre-

petition contract rights, reaffirmed post-petition and pre-confirmation, but primarily

focused on the rights granted under the Guccione Agreements.  Finally, Count 3, pleaded

in the alternative, alleged that if the plaintiff did not acquire contract rights (presumably

referring to the Guccione Agreements), the defendants (other than the Debtor) tortiously

interfered with the plaintiff's prospective economic advantage.

The Movants moved to dismiss the Amended Complaint, arguing that the

bankruptcy discharge barred the pre-petition contract claim, and there never was a post-

petition contract to breach or interfere with.  In addition, they contended that the

allegations in the tort claims failed to meet the pleading requirements imposed under FED.

R. CIV. P. 9 (b).

## DISCUSSION

**A.      Count 1 — Breach of Contract**

Under New York law, a party claiming a breach of contract must prove "(1) a

contract; (2) performance of the contract by one party; (3) breach by the other party; and

(4) damages."  Rexnord Holdings v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994); accord

First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998).  The

Amended Complaint identified two possible contracts, the plaintiff's pre-petition

employment agreement and the plaintiff's post-confirmation employment contract as

embodied in the Guccione Agreements.  It was not always easy to determine precisely

which contract was the subject of each count, and I have assumed that each count

implicates both.

**1.      The Employment Agreement**

Count 1 adequately pleads a claim for breach of the plaintiff's pre-petition

employment agreement.  The plaintiff worked for the Debtor for approximately 33 years.

She was promised certain benefits, including severance pay, in connection with that

employment agreement.  The Debtor terminated her employment on October 7, 2004, and refused to pay those benefits.  The claim that the Debtor agreed to continue to employ her, or induced her to continue to work on the same terms, is subsumed by her pre-petition employment contract claim.[4]

Count 1 does not allege a breach of contract claim based on the plaintiff's termination.  The plaintiff does not contend that she had a right to lifetime employment or a right to employment for a specific duration, at least prior to the effective date.  Under New York law, she was an at-will employee, and has no claim for breach of contract based solely upon her termination.  See Sherman v. HarperCollins Publishers, Inc., No. 98 Civ. 2809 (AJP)(MBM) 1998 WL 437158, at *2 (S.D.N.Y. July 31, 1998)(citing cases).  The Debtor was free to fire her, and her contract claim is one for breach of the obligation to pay benefits accruing on the termination.

As noted, the Movants contend that the bankruptcy discharge bars the plaintiff's claim for severance pay.  The Plan rejected certain executory contracts listed on a Schedule 7.1B, and directed the non-debtor party to file its rejection damage claim within 30 days of the notice of the order approving the rejection (the "Rejection Claims Bar Date").  Any claims not filed within that time would be barred:

> 7.1    Assumption or Rejection of Executory Contracts and Unexpired Leases
>
> 7.1.1    Executory Contracts and Personal Property Leases.  Except as otherwise provided herein or by the Confirmation Order, as of the Effective Date,… All executory contracts and personal property leases set forth in Schedule 7.1B filed simultaneously herewith shall be deemed rejected as of the Effective Date. No executory contracts or personal

---

[4]        At oral argument, plaintiff's counsel described these continuing promises, made between the petition date and the confirmation date, as a "reaffirmation" of her pre-petition agreement.

property leases, other than those listed in Schedule 7.1B, shall be rejected
after the Confirmation Date . . . .

. . . .

7.1.5    Bar Date for Filing Proofs of Claim Relating to Executory
Contracts or Personal Property Leases Rejected Pursuant to the Plan.
Unless the Bankruptcy Court fixes a different time period pursuant to an
order approving the rejection of a contract or lease, Claims arising out of
the rejection of an executory contract or personal property lease pursuant
to this Section 7.1 and Schedule 7.1B must be filed with the Bankruptcy
Court no later than thirty (30) days after notice of entry of an order
approving the rejection of such contract or lease (the "Rejection Claim Bar
Date"). Any Claims not filed within such time will be forever barred from
assertion against the estates, the Reorganized Debtors and their property
and will not receive any distributions under the Plan.

Paragraph 15 of the Confirmation Order required the Debtor to serve notice of the

Rejection Claims Bar Date on the non-debtor party to a contract rejected under section

7.1, and repeated the effect of the failure to meet the claim filing deadline:

Proof of any claim for breach of an executory contract rejected pursuant to
section 7.1.1 and Schedule 7.1(B) of the Fourth Amended Plan shall be
served and filed with the Court no later than thirty (30) days after notice of
entry of the Confirmation Order (the "Rejection Claims Bar Date"), or it
shall be forever barred and discharged. On or before the tenth (10th)
Business Day following the date of entry of this Confirmation Order, the
Debtors shall electronically file with the Bankruptcy Court and serve
notice, in the form attached hereto as Exhibit A, of entry of this
Confirmation Order and the Rejection Claims Bar Date upon those
parties to executory contracts rejected pursuant to section 7.1.1 and
Schedule 7.1(B) of the Fourth Amended Plan.

Once again, the Rejection Claims Bar Date was limited to those contracts listed

on Schedule 7.1(B) and rejected pursuant to section 7.1.1 of the Plan.

The plaintiff's pre-petition employment agreement was not listed on Schedule

7.1(B), (see Plan Supplement, Ex. 5), or rejected under section 7.1.1 of the Plan.  Instead,

the Plan dealt separately with severance claims in section 7.3:

7.3.    Compensation and Benefit Programs. All employment and
severance practices and policies, and all compensation and benefit plans,

10

policies, and programs of each Debtor applicable to its directors, officers
or employees, including, without limitation, all savings plans, retirement
plans, health care plans, severance benefit plans, incentive plans, workers'
compensation programs and life, disability and other insurance plans are
treated as executory contracts under the Plan and are hereby rejected
pursuant to Section 365(a) of the Bankruptcy Code, except for those
specified in Schedule 7.1 hereto to be filed simultaneously herewith in the
Fourth Amended Plan Supplement, which executory contracts shall be
deemed assumed as of the Effective Date.

It appears from the face of the Plan and the Confirmation Order that the Rejection

Claims Bar Date did not apply to the plaintiff's severance pay claim, and no other bar

date covered severance claims.  But even if the Rejection Claims Bar Date covered to the

Debtor's claim, the affidavit of service of the notice of rejection and Rejection Claims

Bar Date filed with the Court does not include the plaintiff's name.  (See Affidavit of

Service [of Notice of Rejection Claims Bar Date and Entry of Confirmation Order],

sworn to Aug. 20, 2004 (ECF Doc. # 671.))  Thus, it appears that the Debtor failed to

comply with the direction in the Confirmation Order to serve the plaintiff with notice of

the Rejection Claims Bar Date.

Accordingly, the motion to dismiss the pre-petition employment contract claim is

denied.

### 2.        The Guccione Agreements

The Amended Complaint does not state a claim on behalf of the plaintiff for

breach of the Guccione Agreements.  First, the Guccione Agreements were never signed.

Second, even if they had been, they did not give the plaintiff any enforceable rights.

Only an intended beneficiary may assert a contract claim as a third party beneficiary.

Mortise v. United States, 102 F.3d 693, 697 (2d Cir. 1996).  A third party is an intended

beneficiary when either (1) no one other than the third party can recover if the promisor

breaches the contract, or (2) the language of the contract clearly evidences an intent to permit the third party to enforce it.  Picolli v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157, 162 (S.D.N.Y. 1998); Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 485 N.E.2d 208, 212 (N.Y. 1985).  If the third party is not an intended beneficiary, she is, at most, an incidental beneficiary.  Id.  ("An incidental beneficiary is one who is not an intended beneficiary." (citing RESTATEMENT [SECOND] OF CONTRACTS §302 [2]).)

The plaintiff fails the first prong because Guccione (or GMII) could have enforced the breach of the Guccione Agreements.  She also fails the second prong.  The Guccione Agreements stated that "no other person shall acquire or have any rights under or by virtue of this Agreement." (See Consulting Agreement, at ¶8.04; Letter Agreement, at ¶13.)  "Under New York law, the effectiveness of a negating clause to preclude third-party beneficiary status is well-established: '[w]here a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, ... that provision is decisive.'"  India.com, Inc. v. Dalal, 412 F.3d 315, 321 (2d Cir. 2005)(quoting Nepco Forged Prods., Inc. v. Consolidated Edison Co. of N.Y., Inc., 470 N.Y.S.2d 680, 681 (N.Y. App. Div., 2d Dep't 1984)); accord Morse/Diesel, Inc. v. Trinity Indus., Inc., 859 F.2d 242, 249 (2d Cir. 1988)("Under New York law, where a provision in a contract expressly negates enforcement by third parties, that provision is controlling.").  Notwithstanding the language in the Letter Agreement, these clauses expressly negate any intent to benefit the plaintiff.  She is an incidental beneficiary, and has no enforceable rights.

Finally, the plaintiff's attempt to distinguish India.com is unconvincing.  There, one of the plaintiffs (EasyLink) hired the defendant to act as a broker to sell an EasyLink

subsidiary.  The defendant located a buyer, and EasyLink and the buyer entered into a stock purchase agreement.  The stock purchase agreement acknowledged the brokerage agreement, and stated that the defendant was entitled to fees payable pursuant to its provisions.  The stock purchase agreement also contained a negating clause stating that it was not intended to create any right or claim in favor of any non-party.  412 F.3d 317-18. The buyer needed to obtain certain regulatory approvals to close, and required EasyLink's help to get them.  EasyLink allegedly failed to cooperate, and terminated the stock purchase agreement on the ground that the buyer failed to obtain the approvals by the deadline specified in the contract.  Id. at 318.

The broker sued as a third-party beneficiary for breach of the stock purchase agreement.  The Court of Appeals rejected the claim, and ruled in accordance with the settled New York law discussed above, that the negating clause prevented the broker from acquiring rights under the stock purchase agreement, even though the latter mentioned his brokerage agreement.  Id. at 322.

The broker also sued for breach of the brokerage agreement.  He argued that EasyLink had wrongfully terminated the stock purchase agreement to avoid paying the brokerage commission.  Id. at 323.  The Court ruled that a seller could be liable for the commission, even in the absence of a closing, if the seller was responsible for the failure of the condition.  Id. at 324.  Seizing on this last point, the plaintiff implies that she is entitled to recover under the Guccione Agreements because the defendants were responsible for the failure to execute them.  (Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss on the Pleadings, dated Apr. 17, 2007, at ¶¶ 9-10)(ECF Doc. # 58 filed in Adv. Proc. No. 05-3658.)

Her argument misses the point.  In India.com, the broker was allowed to pursue his claims against EasyLink under the separate brokerage agreement that both parties had signed, although he could not pursue a third-party beneficiary claim under the stock purchase agreement.  It did not matter that EasyLink prevented the consummation of the stock purchase agreement because the defendant did not have any rights under that agreement.  Here, too, the plaintiff may pursue claims under her employment agreement with the Debtor, but cannot pursue third-party beneficiary claims under the Guccione Agreements, even if the Debtor prevented their execution.  India.com does not support the argument that she can sue as a third-party beneficiary of the Guccione Agreements.

**B.      Count 2 — Tortious Interference With Contract**

To prevail on a claim for tortious interference with contract, a plaintiff must establish: (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages.  White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 285 (2d Cir. 2006); Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001); Foster v. Churchill, 665 N.E.2d 153, 156 (N.Y. 1996).  In addition, Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations involving fraud must state the circumstances constituting fraud with particularity.  Even where fraud is not an element of the claim, the allegations must satisfy FED. R. CIV. P. 9(b) if the claim is based on fraudulent conduct. Krause v. Forex Exch. Mkt., Inc., 356 F. Supp. 2d 332, 338 n.49 (S.D.N.Y. 2005); see Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).  Lastly, a pleader cannot allege fraud based upon information and belief unless the facts are "peculiarly within the opposing party's knowledge." Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379

(2d Cir. 1974), cert. denied, 421 U.S. 976 (1975); accord Campaniello Imports, Ltd. v.

Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997).  In those cases, the pleader must

nonetheless allege facts upon which the belief is founded.  Id.

### 1.       Plaintiff's At-Will Employment

Generally, an at-will employee cannot assert a claim for tortious interference with

that employment.  Albert v. Loksen, 239 F.3d at 274; Ingle v. Glamore Motor Sales, Inc.,

535 N.E.2d 1311, 1313 (N.Y. 1989)("the plaintiff here cannot be allowed to evade the

employment at-will rule and relationship by recasting his cause of action in the garb of a

tortious interference with his employment").  New York law recognizes a limited

exception where "a third party used wrongful means to effect the termination such as

fraud, misrepresentation, or threats, that the means used violated a duty owed by the

defendant to the plaintiff, or that the defendant acted with malice."  Albert v. Loksen, 239

F.3d at 274 (quoting Cohen v. Davis, 926 F. Supp. 399, 403 (S.D.N.Y.1996).)  The

defendant cannot be a party to the contract, and the employees of a corporate party are

considered parties to the contract for this purpose.  See id., 239 F.3d at 274.  A co-

employee can only be liable for tortious interference with an at-will employment

agreement if he acted beyond the scope of his authority or committed an independent

tortious act against the plaintiff.  Id. at 275.

Here, the plaintiff's at-will employment with the Debtor was terminated after the

effective date.  By then, Bell and Staton were officers and directors of the Debtor.  Thus,

they were co-employees with the plaintiff, and Bell clearly had the authority to fire her

and refuse to pay her severance claim.  Since Staton was acting with Bell, he had the

same authority.

The plaintiff also failed to allege that Bell or Staton committed an independent tortious act against her.  The only arguable independent tort concerned the misrepresentations made to Guccione regarding his post-confirmation consulting package.  Under New York law, the elements of a fraud claim are  (1) a misrepresentation by the defendant, (2) made with knowledge of the falsity and the intent to deceive (3) justifiable reliance by the plaintiff and (4) injury.  Guilbert v. Gardner, 480 F.3d 140, 147 n.5 (2d Cir. 2007); May Dep't Stores Co. v. Int'l Leasing Corp., 1 F.3d 138, 141 (2d Cir.1993); Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir.1987). The Amended Complaint does not allege that the Bell or Staton made any misrepresentations to the plaintiff; they made their alleged misrepresentations to Guccione.  Thus, they could not have intended that the plaintiff would rely on what they said to him.  Moreover, although the plaintiff indicates that she relied on the promise of future employment contained in the Guccione Agreements, (Amended Complaint, at ¶ 25), those agreements were attached to a Plan Supplement that was signed by Guccione, not Bell or Staton.   Furthermore, while the plaintiff alleges that "authorized representatives" of the Debtor promised her numerous employment benefits, the representations spanned a 33-year period, and the plaintiff does not allege that they were false when made.

Finally, the allegations of fraud fail to satisfy FED. R. CIV. P. 9(b).  Although styled as a claim for tortious interference with contract, Count 2 is premised on the fraud committed by the defendants.  She must prove that fraud to prevail on her claim.  The plaintiff did not identify who made representations to her about her continued employment or when they were made.  Moreover, the plaintiff did not allege facts

sufficient to support the inference of <u>scienter</u> concerning the representations of continued

employment made to her.  Finally, some of the allegations in the Guccione Complaint as

well as the Amended Complaint are alleged upon information and belief.  (<u>See</u> Amended

Complaint, at ¶ 25.)

> **2.      The Guccione Agreements**

The plaintiff also failed to allege a tortious interference with existing rights under

the Guccione Agreements.  As noted, the Guccione Agreements were never signed.

Furthermore, an incidental beneficiary cannot maintain a claim for tortious interference

with her rights under a contract that did not grant her any enforceable rights in the first

place.  <u>See</u> <u>Tasso v. Platinum Guild Int'l</u>, No. 94 Civ. 8288(LAP), 1998 WL 841489, at

*4 (S.D.N.Y. Dec. 3, 1998)("New York courts have declined to recognize the right of

incidental beneficiaries to sue for tortious interference of contract"); <u>Alvord & Swift v.</u>

<u>Stewart M. Muller Constr. Co.</u>, 385 N.E.2d 1238, 1241 (N.Y. 1978)("There exists . . . no

tort liability to incidental beneficiaries not in privity.").

Accordingly, Count 2 is dismissed.

## C.      Count 3 — Tortious Interference With Prospective Economic Advantage

The plaintiff's final claim, pleaded in the alternative, asserts that absent the

wrongdoing by the non-Debtor defendants, she would have enjoyed a contractual

relationship with the Debtor, "and/or would have received the benefits due to her."

(Amended Complaint, at ¶ 34.)  Their actions were "prompted by legal malice, were

morally culpable, and far exceeded the bounds of legitimate, robust business practices,"

and "were part of a fraudulent scheme to obtain control over" the Debtor.  (<u>Id.</u> at ¶ 35.)

In other words, the defendants tortiously interfered with the rights that the plaintiff would have acquired under the Guccione Agreements.[5]

To establish a claim for tortious interference with prospective business relations, the plaintiff must allege "1) that the defendant interfered with a business relationship between, and belonging to, plaintiff and a third party; 2) with the sole purpose of either harming the plaintiff, or by means which are dishonest, unfair or otherwise improper; and 3) that plaintiff would have entered into a contract with the third party but for the defendant's interference." Tasso, 1998 WL 841489, at * 4.  The plaintiff's expectation in prospective business relations is entitled to less protection than existing contracts or business relations.  Consequently, the plaintiff must also show that the defendant used wrongful means.  NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc., 664 N.E.2d 492, 496 (N.Y.1996); Guard-Life Corp. v. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 449 (N.Y.1980).

The plaintiff was neither a party nor an intended beneficiary of the Guccione Agreements, and cannot satisfy the last element.  Furthermore, the claim fails because the Amended Complaint and the Guccione Complaint described a scheme by Bell and Staton to take over the Debtor rather than to harm the plaintiff.  See Lobel v. Maimonides Med. Ctr., 2007 WL 1052823, at *1 (N.Y. App. Div. Apr. 10, 2007)("Nor . . . did plaintiff's allegations concerning statements purportedly defaming her set forth grounds for a tortious interference claim, since it is clear that any motivation on defendant Grazi's part

---

[5]    Since the plaintiff had existing pre-petition employment contract rights, this Count cannot be read to encompass that agreement.  To the extent that Count 3 is read to allege that Bell and Staton interfered with her right to severance pay by causing the Debtor not to pay it, it merely duplicates the breach of contract claim in Count 1.

was based on economic self-interest and not for the sole purpose of harming plaintiff).

Lastly, the Amended Complaint failed to allege that Bell and Staton committed any

tortious acts against the plaintiff.  Finally, Count 3 fails to satisfy Rule 9(b) for the same

reasons as Count 2.

Based on the foregoing, Count 3 is dismissed.

### D.    Sanctions

The moving defendants seek sanctions against the plaintiff and her counsel for

filing the Amended Complaint.  This requires some more background.  The plaintiff's

original complaint, (see Attachment #3 to ECF Doc. # 26 filed in Adv. Proc. No. 05-

03658)(the "Complaint"), included several conclusory tort allegations, and lacked

specificity.  For example, Count 2 charged that "Bell . . . maliciously without just cause

[has] interfered with the payment of the contractual entitlement due to plaintiff."

(Complaint, at ¶ 17.)  Count 3 alleged that the Debtors "engaged in fraud by and through

its representations to plaintiff."  (Id., at ¶ 20.)  Finally, the plaintiff contended in Count 4

that "the actions of defendants in denying severance benefits and/or causing the denial of

severance benefits are without justification and are malicious in nature which have

caused foreseeable damage to plaintiff, including but not limited to economic damages

and damages from emotional distress."  (Id., at ¶ 29.)

The Debtor and Bell moved for summary judgment on September 15, 2006.  The

central premise of the motion was that the severance claim was barred by the bankruptcy

discharge.  In addition, they argued that the tort claims were not adequately pleaded. The

Court conducted a hearing on January 25, 2007, at which it essentially denied summary

judgment on the severance pay claim.[6]  The plaintiff had presented evidence that the

Debtor's counsel had assured her that it was unnecessary to file a claim because she

would continue to work for the Debtor, and she relied on that representation.  This raised

an issue of equitable estoppel.  (Transcript of hearing held Jan. 25, 2007, at 4-6, 7-8, 10)

(ECF Doc. # 47, filed in Adv. Proc. No. 05-03658.)

The Court and the parties then turned their attention to the tort claims.  I reiterated

my earlier impression that the plaintiff had not pleaded the fraud claims, including the

tortious interference claims that sounded in fraud or depended on proof of fraud, with

sufficient specificity.  (Id. at 12.)  On that prior occasion, I had suggested to the plaintiff

that she amend the tort claims because they did not pass muster under the pleading

requirements.  (Id. at 13.)  In the end, I granted the plaintiff leave to replead her

complaint.

The Amended Complaint was slightly more informative.  It added additional

defendants, included extra allegations, and attached and/or incorporated by reference the

Guccione Agreements, the Guccione Complaint, and possibly, the Plan.  After receiving

the Amended Complaint, Bell, Staton and the Debtor responded with a "safe harbor"

letter, dated February 12, 2007.  (See Application in Support of an Order Imposing

Sanctions Against Plaintiff and Her Counsel, dated Feb. 28, 2007 ("Sanctions Motion"),

Ex. A (see ECF Doc. # 50 filed in Adv Proc. No. # 05-03658.))  They insisted that the

Amended Complaint repeated the same deficient allegations, and ignored the Court's

warning regarding those deficiencies; the only difference, they said, was that the plaintiff

---

[6]     The Court never formerly ruled on the summary judgment motion or asked either party to submit
an order.

attached the Guccione Complaint, which did not mention the plaintiff, to her Amended

Complaint.  Contending that the claims were unwarranted under existing law and

intended to harass, they demanded that the plaintiff withdraw the Amended Complaint or

face a motion under FED. R. BANKR. P. 9011.  The plaintiff declined the invitation in a

terse reply sent ten days later, (Sanctions Motion, Ex. B), and the Movants filed the

Sanctions Motion on March 1, 2007.

Rule 9011 of the Federal Bankruptcy Rules governs the imposition of sanctions.

The party that presents a pleading to the court makes the four certifications set forth in

subparagraph (b):

> (b) **Representations to the Court.**
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

If a party violates the provisions of subparagraph (b), the court <u>may</u> impose the sanctions

set forth in Rule 9011 (c).

I decline to impose sanctions against the plaintiff or her counsel for several reasons. She adequately pleaded a claim for severance pay under her at-will employment agreement. Moreover, there is a substantial question whether the bankruptcy discharge bars that claim for the reasons already stated. Lastly, there is some evidence supporting the plaintiff's contention that the Debtor may be estopped from relying on the discharge. According to the plaintiff, the Debtor's attorney told her that she did not have to file a claim because the Debtor would continue to employ her.

It is true that the Amended Complaint again failed to plead legally sufficient tort claims, but it is inaccurate to suggest that it was a mirror image of the original Complaint with the Guccione Complaint added on. First, the Guccione Complaint had some value, and explained the misrepresentations allegedly made to Guccione, and the motive for those statements. The plaintiff's problem is her inability to latch on to Guccione's tort claim. Second, the Amended Complaint contained additional allegations and new theories. Third, the substantive deficiency with the tort claims in the Amended Complaint – the plaintiff's status as an incidental beneficiary as well as her at-will employment – was not even apparent to the Movants until the Court requested briefing on the issue. Under the circumstances, I do not conclude that the Amended Complaint was interposed for an improper purpose, designed to harass or lacking in a legal or factual basis.

## CONCLUSION

The motion to dismiss Count 1 is denied to the extent that the claim for severance pay is based on the pre-petition at-will employment agreement, and is otherwise granted. Count 2 and Count 3 are also dismissed. The motion for sanctions is denied. Finally, to

clarify a hole in the record, the earlier summary judgment motion is denied.  Counsel

should settle three orders addressing the disposition of the three motions.  In addition,

counsel should contact chambers to arrange a conference to discuss, among other things,

the status of the claims against the other defendants in this adversary proceeding, the

effect of the jury demand and the disposition of this adversary proceeding.


Dated: New York, New York
        May 9, 2007


                            /s/ *Stuart M. Bernstein*
                            STUART M. BERNSTEIN
                    Chief United States Bankruptcy Judge